# Third District Court of Appeal

## State of Florida

Opinion filed December 26, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-1154
Lower Tribunal No. PRRC2014-1

_____

## FRS-FAST Reliable Seaway, LLC., et al.,
Petitioners,

vs.

## Board of Pilot Commissioners of the State of Florida, et al.,
Respondents.

On Petition for Writ of Certiorari from the Pilotage Rate Review Committee of the Florida Department of Business and Professional Regulation.

Wicker, Smith, O'Hara, McCoy & Ford, P.A., and Jordan S. Cohen, Brandon J. Hechtman and Alyssa M. Reiter, for petitioners.

Radey Law Firm, and Donna E. Blanton, Brittany Adams Long, and Lauren Thompson (Tallahassee), for Biscayne Bay Pilots, Inc.; Panza, Maurer & Maynard, P.A., and Thomas F. Panza and Jennifer K. Graner (Fort Lauderdale), for Florida-Caribbean Cruise Association; Marlene K. Stern and Clark Jennings, Assistant Attorneys General (Tallahassee), for Pilotage Rate Review Committee, for respondents.

Before SALTER, SCALES and LINDSEY, JJ.

SCALES, J.

Petitioners FRS-Fast Reliable Seaway, LLC., Antillean Marine Shipping, Corp., Betty K Agencies (USA), L.L.C., God Is Able Shipping, LLC, and River Terminal Services, Inc. (collectively, "Petitioners") challenge, via petition for writ of certiorari, a final order rendered by respondent Pilotage Rate Review Committee ("the Committee"), a committee of the Board of Pilot Commissioners of the State of Florida ("Board"). Because we lack jurisdiction under Florida Rule of Appellate Procedure 9.030(b)(2) to review final orders of administrative agencies, and because Petitioners are not "parties" for the purposes of final agency action review under section 120.68 of the Florida Statutes, we dismiss the petition without prejudice to Petitioners filing a declaratory judgment and/or injunction action in the Circuit Court.

## I. Parties

Respondent Board is a division of Florida's Department of Business and Professional Regulation. The duties of the ten-member Board are described in chapter 310 of the Florida Statutes. Primarily, the Board determines the number of pilots necessary for efficient piloting services in each port and disciplines pilots for misconduct and other violations of duty or law. See §§ 310.061, 310.101, Fla. Stat. (2017).

2

Pursuant to section 310.151 of the Florida Statutes, the legislature established the Committee to set pilotage rates at the various ports within the state of Florida. This seven-member Committee establishes the rates that pilots[1] may charge for piloting vessels in and out of Florida's various ports. Any pilot or group of pilots or person(s) whose substantial interests are directly affected may apply to the Committee for a change of pilotage rates. § 310.151(2), Fla. Stat. (2017).

Respondent Florida Caribbean Cruise Association ("Association") is a trade association composed of fifteen cruise line companies that are either based at PortMiami or call on PortMiami regularly. Respondent Biscayne Bay Pilots, Inc. ("Pilots") is an association of harbor pilots who perform pilotage services at PortMiami.

Petitioners are five individual shipping companies working within PortMiami that object to pilotage rate changes the Committee adopted in a final order dated May 9, 2018, but that did not participate in the lower tribunal proceedings.

## II. Factual and Procedural Background

In March of 2014, Association filed an application to the Committee seeking a twenty-five percent decrease in pilotage rates for passenger vessels calling on PortMiami. Two years later, in March of 2016, Pilots filed a competing application

---

[1] Pilots navigate large ships in and out of the ports of Florida. "'Pilot' means a licensed state pilot or a certificated deputy pilot." § 310.002(2), Fla. Stat. (2017).

seeking a set of increases, including a six percent increase in pilotage rates for each of the following five years and additional vessel charges and surcharges. The applications of Association and Pilots eventually were consolidated for the Committee's consideration.

The Committee conducted a three-day hearing on May 16-19, 2017, and preliminarily approved an increase to pilotage rates, but to a lesser extent than the rates proposed by Pilots in their application. Pursuant to section 310.151(4)(a),[2] on

---

[2] This section reads in its entirety as follows:

> The applicant shall be given written notice, either in person or by certified mail, that the committee intends to modify the pilotage rates in that port and that the applicant may, within 21 days after receipt of the notice, request a hearing pursuant to the Administrative Procedure Act. Notice of the intent to modify the pilotage rates in that port shall also be published in the Florida Administrative Register and in a newspaper of general circulation in the affected port area and shall be mailed to any person who has formally requested notice of any rate change in the affected port area. Within 21 days after receipt or publication of notice, any person whose substantial interests will be affected by the intended committee action may request a hearing pursuant to the Administrative Procedure Act. If the committee concludes that the petitioner has raised a disputed issue of material fact, the committee shall designate a hearing, which shall be conducted by formal proceeding before an administrative law judge assigned by the Division of Administrative Hearings pursuant to ss. 120.569 and 120.57(1), unless waived by all parties. If the committee concludes that the petitioner has not raised a disputed issue of material fact and does not designate the petition for hearing, that decision shall be considered final agency action for purposes of s. 120.68. The failure to request a hearing within 21 days after receipt or publication of notice shall constitute a waiver of any right to an administrative hearing and shall cause the order modifying the pilotage rates in that port to be entered.

4

September 21, 2017, the Committee issued its notice of intent ("NOI") to modify the pilotage rates, as the Committee preliminarily approved at its May 2017 meeting.

Then, pursuant to section 310.151(4)(a)'s hearing request provision, both Association and Pilots requested that a hearing be conducted before an administrative law judge (ALJ) designated by the Division of Administrative Hearings. The Committee concluded that the hearing requests raised disputed issues of material fact, thus necessitating a formal hearing by the ALJ. Id. Petitioners did not object to the rates noticed in the September 21, 2017 NOI, and therefore, did not request an administrative hearing.

On January 22, 2018, the ALJ determined there was a defect in the Committee's September 21, 2017 NOI.[3] The ALJ terminated the administrative proceedings and relinquished jurisdiction to the Committee to proceed with its statutory obligations under section 310.151(4)(a). After relinquishment, the

---

> If an administrative hearing is requested pursuant to this subsection, notice of the time, date, and location of the hearing shall be published in the Florida Administrative Register and in a newspaper of general circulation in the affected port area and shall be mailed to the applicant and to any person who has formally requested notice of any rate change for the affected port area.

§ 310.151(4)(a), Fla. Stat. (2017).

[3] The ALJ ascertained that he did not have subject matter jurisdiction because the Committee had not complied with procedures set forth in section 310.151(3) that are a prelude to its issuance of an NOI, thereby causing the September 21, 2017 NOI to be ineffective.

Committee, on January 30, 2018, then issued a corrected NOI to address the infirmities of the September 21, 2017 NOI. The Committee's corrected NOI did not yield a renewed round of administrative review. In fact, no hearing request was filed by any party after the Committee's issuance of the corrected NOI. Instead, Association and Pilots entered into settlement negotiations. Again, Petitioners did not object to the rates noticed in the January 30, 2018 corrected NOI, so they did not request an administrative hearing.

Association and Pilots reached a tentative settlement agreement, and their proposed settlement was presented to the Committee at a noticed meeting on April 27, 2018, at which the Committee approved the negotiated rates outlined in the settlement agreement.[4] The approved rates varied considerably from the rates noticed in the January 30, 2018 corrected NOI. The Committee adopted these negotiated rates and rendered the challenged final order on May 9, 2018.

Petitioners filed the instant petition for certiorari relief, seeking a writ from this Court quashing the Committee's final order.

**III. Discussion and Analysis**

*A. Petitioners' Challenge and the Response*

---

[4] The March 22, 2018 notice for this April 27, 2018 meeting, which included the Committee's agenda, referred to a discussion item related to the proposed settlement agreement, but otherwise did not notice a proposed modification to those pilotage rates the Committee had noticed in its January 30, 2018 NOI, nor did the meeting notice contain the NOI formalities required by section 310.151(4)(a).

6

Petitioners assert that they were denied due process because, in adopting the increased pilotage rates in the May 9, 2018 final order, the Committee failed to follow the notice requirements of section 310.151(4)(a). Thus, Petitioners argue, the Committee failed to provide the designated point of entry into the administrative process, as required by section 310.151(4)(a).

Respondents make two, principal counterarguments as to why this Court should not review the merits of the petition. First, Respondents assert that rate-making is a legislative function, and therefore is not subject to certiorari review. Second, Respondents assert that, because Petitioners never sought an administrative hearing challenging the rates re-noticed in the January 30, 2018 corrected NOI, they lack standing to challenge the rates.

*B. Availability of Relief to the Petitioners*

In order to reach the merits of Petitioners' claims, we initially must decide whether, under the facts of this case, we have jurisdiction to adjudicate a petition seeking certiorari review of a final administrative order. Generally, without jurisdiction, we do not reach the merits of a controversy. See Kincaid v. World Ins. Co., 157 So. 2d 517, 517 (Fla. 1963); see also Parkway Bank v. Fort Myers Armature Works, Inc., 658 So. 2d 646, 649 (Fla. 2d DCA 1995) (explaining that a district court should dismiss, rather than deny, a certiorari petition if the petition fails to establish a basis for jurisdiction). Similarly, without petitioner standing to seek judicial

review under Florida's Administrative Procedures Act ("APA"), we do not reach the merits of a controversy. <u>Norkunas v. Fla. Building Comm'n.</u>, 982 So. 2d 1227, 1228 (Fla. 1st DCA 2008). Our jurisdiction to review a final order from an administrative agency subject to the APA must derive from either Florida Rule of Appellate Procedure 9.030(b)(2) or section 120.68 of the Florida Statutes. We review each in turn.

 1. <u>Rule 9.030(b)(2)</u>

Rule 9.030(b) essentially paraphrases the jurisdictional provisions of article V, section 4(b) of Florida's Constitution. <u>See</u> Fla. R. App. P. 9.030 committee notes (1977). Rule 9.030(b)(2) prescribes the district courts' certiorari jurisdiction, and reads, in its entirety, as follows:

> (2) *Certiorari Jurisdiction.* The certiorari jurisdiction of district courts of appeal may be sought to review
> (A) non-final orders of lower tribunals other than as prescribed by rule 9.130;[5]
> (B) final orders of circuit courts acting in their review capacity.

(Footnote omitted).

Rule 9.030(b)(2)(A) expressly contemplates district courts exercising certiorari jurisdiction to review *non-final* orders of lower tribunals. This rule plainly

---

[5] Within rule 9.130 is a schedule of non-final orders that may be reviewed by direct appeal. Fla. R. App. P. 9.130(3).

does not provide for a district court exercising such jurisdiction to review a *final* order of an administrative agency. Petitioners have provided us with no authority authorizing such review, and our research similarly has uncovered no authority that would expand rule 9.030(b)(2)(A)'s scope to include review of final orders of administrative agencies subject to the APA. We decline Petitioner's invitation to expand the scope of our certiorari jurisdiction to review the Committee's final order.

2. Section 120.68

This does not conclude our inquiry, though, because Article V, section 4(b)(2) of the Florida Constitution provides that district courts shall have direct review of administrative actions "as prescribed by general law."  Section 120.68, in turn, expressly provides for judicial review of final agency action by the district courts. It reads, in relevant part, as follows:

> (1)(a) A *party* who is adversely affected by final agency action is entitled to judicial review.
>
> . . . .
>
> (2)(a) Judicial review shall be sought in the appellate district where the agency maintains its headquarters or where a party resides or as otherwise provided by law. All proceedings shall be instituted by filing a notice of appeal or petition for review in accordance with the Florida Rules of Appellate Procedure within 30 days after the rendition of the order being appealed.
> . . . .
>
> (7) The court shall remand a case to the agency for further proceedings consistent with the court's decision or set aside agency action, as appropriate, when it finds that:

9

. . . .

(c) The fairness of the proceedings or the correctness of the action may have been impaired by a material error in procedure or a failure to follow prescribed procedure . . .

§ 120.68(1)(a), (2)(a), (7)(c), Fla. Stat. (2017) (emphasis supplied).

The statute provides express jurisdictional authority for a district court to review a final order of an administrative agency, and to quash the order if, as asserted here, the fairness of the agency's proceedings were impaired by the agency's failure to follow the prescribed statutory procedures. Critically, though, by the express terms of the statute, only a "party" may invoke such jurisdiction. § 120.68(1)(a), Fla. Stat. (2017).

Section 120.52(13) of the Florida Statutes defines a "party" for the purposes of the APA, and reads in relevant part:

(13) "Party" means:

(a) Specifically named persons whose substantial interests are being determined in the proceeding.

(b) Any other person who, as a matter of constitutional right, provision of statute, or provision of agency regulation, is entitled to participate in whole or in part in the proceeding, or whose substantial interests will be affected by proposed agency action, and who makes an appearance as a party.

(c) Any other person, including an agency staff member, allowed by the agency to intervene or participate in the proceeding as a party.

10

An agency may by rule authorize limited forms of participation in agency proceedings for persons who are not eligible to become parties.

§§ 120.52(13)(a), (b), (c), Fla. Stat. (2017).

While Petitioners might indeed have been adversely affected by the Committee's final order, we are unable to fit Petitioners into any of the statutory definitions of "party" under the APA. Norkunas, 982 So. 2d at 1228.

Petitioners assert that, in response to the NOIs, they did not request an administrative hearing because they had no quarrel with the noticed rates. Petitioners argue that it would be absurd to challenge proposed agency action – *that they support* – simply to achieve "party" status under the APA. Petitioners further assert, without citation to authority, that we should exercise common law certiorari jurisdiction and reach the merits in this case because the impediment to Petitioners' standing was caused by the very conduct they challenge: i.e., the Committee's failure to provide Petitioners with a meaningful point of entry into the administrative process in derogation of section 310.151(4)(a)'s notice requirements. While we are not unsympathetic to Petitioners' arguments in this regard, we nevertheless are constrained by the plain and unambiguous text of the statute, section 120.68(1)(a), and cannot graft an exception onto the statute out of some amorphous sense of

11

fairness.[6] In sum, Petitioners are not "parties" as defined in the APA; therefore, Petitioners lack standing to seek review of the Committee's final order under section 120.68.

**IV. Conclusion**

We lack certiorari jurisdiction to review the Committee's final order; and, because no Petitioner is a "party" under the APA, Petitioners lack standing to assert a challenge to the final order under section 120.68. We, therefore, do not reach the merits of Petitioners' claims, and are compelled to dismiss the petition. Our dismissal, though, is without prejudice to Petitioners bringing an action for declaratory judgment and/or injunction in the Circuit Court.[7]

Petition dismissed.

---

[6] Our conclusion in this regard is somewhat ameliorated by the Committee's concession that the final order – as a quasi-legislative action – may be reviewable in the Circuit Court via a declaratory judgment and/or injunction action. See Haines City Cmty. Dev. v. Heggs, 658 So. 2d 523, 526 n.3 (Fla. 1995).

[7] We express no opinion as to the viability or merits of any such action.